SEVENTH DISTRICT COMMITTEE OF THE VIRGINIA STATE BAR v. E.
EUGENE GUNTER.

October 11, 1971.

Record No. 7604.

Present, All the Justices.

*J. T. Camblos, Commonwealth's Attorney Designate for the City
of Winchester,* and *T. J. Markow, Assistant Attorney General (An-
drew P. Miller, Attorney General,* on brief), for plaintiff in error.

*Ernest G. Garrett, Jr.,* and *Thomas H. Atkins (G. Kenneth Miller;
May, Garrett and Miller,* on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

The Seventh District Committee of the Virginia State Bar (Committee), after due investigation, filed a complaint in the Corporation Court of the City of Winchester, Virginia, charging E. Eugene Gunter, an attorney, (Gunter), with malpractice, unethical and unprofessional conduct. The Committee alleged that Gunter "did, for the purpose of misleading the said Committee, alter, change and falsify a date upon a statement taken by him from a client, and which said date was material to the investigation being made by the Committee, said date change being from Feb. 14 to Feb. 20, 1968". Attached to the Committee's complaint, and expressly made a part thereof, was an exhibit styled "Report of the Seventh District Committee of the Virginia State Bar".

Pursuant to the complaint the court issued a rule against Gunter ordering him to show cause why he should not be disbarred or suspended from the practice of law. At the hearing before a special three-judge Corporation Court of the City of Winchester, the court struck the evidence of the Committee and dismissed the complaint. The Committee appeals, as of right, under Code § 54-74 (5).

The genesis of this proceeding is an automobile accident in Frederick County on February 5, 1968 between a vehicle belonging to White, a client of Gunter, and a vehicle driven by Jones. Jones was charged with a traffic violation and summoned to appear before the County Court of Frederick County on February 19, 1968. On February 14, 1968, and while the criminal charge against Jones was pending, Gunter, the Commonwealth's Attorney of the county, allegedly accepted representation of White in connection with the civil aspects of the automobile accident, and took from White a statement as to the facts surrounding the accident, the statement being dated February 14, 1968. On February 19, 1968 Jones appeared before the County Court, entered a plea of guilty to the criminal charge against him, and paid a fine.

On February 20, 1968 Gunter wrote to either Jones or his liability carrier advising that he represented White and his wife on their claim for civil damages growing out of the accident. Sometime thereafter an adjuster, who represented Jones' company, endeavored to contact Gunter at his office in Winchester regarding the case. At that time Gunter's secretary exhibited the file in the White case to the adjuster, and he observed the statement from White taken by Gunter. He noted that this statement was dated February 14, 1968, five days

prior to the date on which Jones was summoned to answer a criminal charge for reckless driving.

The fact that Gunter had apparently accepted civil employment from White while the criminal charge against Jones was pending was reported by the adjuster to his company's attorneys in Winchester, the firm of Kuykendall and Whiting. Thereafter, on July 21, 1969, Mr. Whiting of this law firm made a written complaint to the Committee which prompted its investigation of the matter.

Pertinent to this case is the fact that during the summer of 1969, in addition to the complaint made by Whiting in the White case, the Committee had before it four other complaints of alleged unethical conduct by Gunter, and all were under investigation. One complaint, referred to as the Anderson case, had been set for trial on August 29, 1969.

Gunter employed the firm of Harrison and Johnston of Winchester to represent him. Dabney W. Watts, the Commonwealth's Attorney for the City of Winchester, and a member of the Committee, was delegated by the Committee to make investigation.

Watts testified that about August 8th Mr. William A. Johnston, of counsel for Gunter, came to his office and stated they had received reports that the Committee was investigating other matters filed against Gunter since July 1, 1969. Watts confirmed this and disclosed to Johnston the nature of the complaints, including the White case. Watts said that one or two days later Johnston again came to his office and advised him that they were willing to cooperate with the Committee in the disposition of the new complaints; that they wanted to "lay their cards on the table"; that this could be done by having a meeting between the attorneys representing Gunter, Mr. Talmage N. Cooley, chairman of the Committee, and Watts; that such a meeting be had with the view to having the Committee unite in a joint motion with Gunter's attorneys for a continuance of the Anderson hearing; and that a meeting of the Committee be convened at which they would "put their cards on the table; and, particularly, in the White case".

Watts advised Cooley of this request and they agreed to meet with Gunter's attorneys in Harrisonburg, Virginia on August 20, 1969.

Johnston corroborated the statements made by Watts of the preliminaries incident to the meeting in Harrisonburg. He testified that Watts advised him fully on August 8th of the information that the

Committee then had on the three cases and this information was conveyed by him to Gunter.

A conference was held between Gunter and his attorneys, Johnston, Burr P. Harrison and B. J. Tisinger, at which time their strategy and "handling approach" with Watts and Cooley were discussed. Johnston testified that Watts had advised him that the White case involved the question of whether or not a statement had been taken by Gunter from White on February 14, 1968. Johnston said that his firm had been advised by Gunter "that there had been no approach to him by the client [White] until after the disposition of a criminal charge [against Jones] with regard to that case, which we found was disposed of on the 19th of February of that year"; that Gunter delivered to them a copy of a typewritten transcript of what he [Gunter] said was a tape recording of his original interview with White; that it was a document of some eight or nine pages and was dated February 20, 1968. Gunter also delivered to his attorneys his file in the White case which Johnston said "he described to us as an 'active' file". Johnston testified that there was no document concerning the White matter in this file dated prior to February 20, 1968.

The evidence is clear that at this conference between Gunter and his attorneys a strategy or approach was devised and agreed upon by them. The attorneys, relying upon Gunter's representation that he had not been approached by White prior to the disposition of the criminal charge, and armed with Gunter's file which contained the statement dated February 20th, concluded that they could "seize on that case [the White case] as our weapon to gain the confidence of the Committee and our request for further concessions and considerations in the handling of those cases and a reconsideration of the Anderson case". All of this was discussed with Gunter.

The attorneys for Gunter concluded that from what had been represented to them by their client, which they then believed, they had a perfect defense in the White case, and that they "could not afford to let them [the Committee] get away with dropping that case, we wanted to make it part of our overall strategy".

With minor variations, the testimony of Harrison and Tisinger was substantially the same as and corroborated that of Johnston.

The agreed meeting was held with Cooley and Watts in Harrisonburg on August 20, 1969, at which time all of the cases involving Gunter were discussed. Gunter's attorneys had the file he had given

them, and during the course of the conference, and with regard to the White case, Tisinger observed, "here is a copy of the statement". Watts noticed that the statement was a "photographic copy" and said that he saw the date, February 20th, on it. Tisinger stated that at this conference the attorneys for Gunter made the representation to Cooley and Watts "that there was nothing in the White file, dated prior to February 19, 1968" or any document in the file indicating Gunter's involvement in the case prior to February 19, 1968.

Burr Harrison testified that, because of the assurances he and his associates had from Gunter, they developed the strategy outlined by his associates, and that this strategy was followed at the meeting with Watts and Cooley on August 20th and with the authority of Gunter.

At the August 20th meeting Cooley and Watts, for the Committee, acceded to the request of Gunter's attorneys that the Anderson case be continued. This was in order that there could be an informal meeting between the full Committee, Gunter and his counsel, as requested.

The full Committee meeting was set for September 17, 1969 in Winchester, its purpose being to consider matters which had come up subsequent to July 1, 1969, including the White case, and to determine whether or not there should be any reconsideration of the Anderson case. Prior to the meeting the Committee was advised that the Harrison firm had withdrawn from representation of Gunter in connection with matters arising after July 1, 1969. At the meeting on September 17th Gunter appeared in person, the Harrison firm appeared in connection with the Anderson case [it later withdrew from this case], and Mr. Thomas V. Monahan appeared as counsel for Gunter in matters that had arisen since July 1, 1969. During this meeting Gunter submitted to the Committee a typewritten copy of the statement he took from White and this statement bore the date of February 14, 1968, the same date mentioned in the report of the insurance adjuster.

The record shows that in Harrisonburg Gunter's attorneys agreed to provide the Committee with certain additional information, including another statement which they were to secure from White. Between the Harrisonburg meeting and September 17th there were developments, including information gained from interviews with and statements given by White, which precipitated the withdrawal of the Harrison firm from representation of Gunter. However, this

firm had made certain firm commitments to Cooley and Watts as to what would be produced before the full Committee. Harrison testified that "Mr. Watts was very insistent that Mr. Monahan should know of the commitments that we had made, as to what would be produced at the hearing in that case; [the] statement made on February 14th or 20th, the contract of employment [between White and Gunter] and the statement made by Mr. White [the one Gunter's attorneys agreed to obtain]". Gunter was advised before September 17th by Harrison "that the statement had to be produced, that we had committed ourselves". At the September 17th meeting a member of the Harrison firm advised the Committee of this commitment, and it was then, and after a consultation between Gunter and Monahan, that Gunter produced the true February 14, 1968, statement.

At this meeting the Committee concluded that there had been a deliberate falsification of the date on the White statement during the course of the Committee's investigation and that the matter merited a formal written complaint against Gunter.

The formal complaint was heard by the Committee on October 8, 1969. The statement in controversy dated February 14, 1968 was introduced bearing the heading *"Shirley Mason White et ux* v. *Claude Allen Jones.* Testimony of Shirley White, taken at the Law Office of E. Eugene Gunter, Winchester, Virginia, February 14, 1968". At the same time an identical statement was introduced in evidence bearing the same heading but dated February 20, 1968. Mr. Gunter appeared before the Committee and stated: "[B]oth of these statements you have here are identical with the exception of the date on the front of them. . . . but at any rate I considered changing the date on that statement and I had that statement typed for that purpose. . . ." Gunter further stated that he did not know the statement was going to be presented at the August 20th conference and it was not intended to be presented that day. He said that the August 20th meeting was to set a hearing at which evidence would be presented, and that when that hearing was had, [on September 17th], he presented the true statement of his own volition and because he "wanted to make a clean breast of everything in reference to this matter and any and all other matters".

The September 17th hearing resulted in the Committee directing that a verified complaint be filed against Gunter. Upon the trial of the rule issued pursuant to this complaint, the trial court sustained

Gunter's motion to strike the Committee's evidence, dismissed the proceedings, and said:

"This is not a general investigation of Mr. Gunter's character or actions, we are dealing here with a specific and precise charge. We think that there is no evidence as to the date when the alteration was made. . . . And while there might be speculation as to the purposes for which it was made, since you do not know when it was made, we do not think the proof carries out the allegation that it was made for the purpose of misleading the Committee.

"Our second point is that the charge refers to the fact that this 'said date was material to the investigation.' The Committee, with knowledge of the correct date, found that there wasn't, as we understand it, there was no conflict of interest, so we fail to see how this could have been material.

"Third, . . . with respect to the purpose of misleading the Committee, there is no evidence to show that Mr. Gunter's attorneys used the altered statement to influence the Committee. They were not directed to do so, nor did they knowingly do so."

We disagree with the conclusions and the holding of the trial court.

The principles which control our decision have been repeatedly stated. A proceeding to discipline an attorney is not a criminal proceeding and the purpose is not to punish him but to protect the public. It is a special proceeding, civil and disciplinary in nature, and of a summary character. It is in the nature of an inquest or inquiry as to the conduct of the attorney. Being an informal proceeding it is only necessary that the attorney be informed of the nature of the charge preferred against him and be given an opportunity to answer. While liberality of construction is the rule, reasonable strictness of proof is necessary before guilt should be held to have been established—not proof beyond a reasonable doubt, but clear proof. See Norfolk Bar Ass'n v. Drewry, 161 Va. 833, 172 S. E. 282 (1934); Campbell v. Third Dist. Comm., 179 Va. 244, 18 S. E. 2d 883 (1942); Maddy v. District Committee, 205 Va. 652, 139 S. E. 2d 56 (1964).

The complaint, and the exhibit made a part thereof, were sufficiently precise and specific to inform Gunter of the nature of the charge against him. The exhibit sets forth in detail the entire history of the matter beginning with the automobile collision and continuing

through the formal hearing on October 8, 1969. The facts heretofore detailed in this opinion are substantially the same as the allegations against Gunter found in the exhibit which is the formal report of the Committee.

While the evidence does not disclose the date on which Gunter altered or changed the White statement, exhibited at the Harrisonburg meeting, this is immaterial. It is a concessum that Gunter did take a statement from White on February 14, 1968, and that thereafter he did alter the statement by rewriting it and changing the date on the first page from February 14, 1968 to February 20, 1968. The file that Gunter delivered to his attorneys did not contain a statement dated February 14th. It did contain a statement dated February 20, 1968 which was not in fact taken on that date. Clearly this was done to meet and negate the conflict of interest complaint then under investigation by the Committee.

The date of the statement was material to the investigation. The nonexistence of a February 14th statement was not only the crux of the conflict of interest charge in the White case, but was the weapon which the attorneys for Gunter used in negotiating with the Committee as to all charges then pending against Gunter.

The sole purpose of falsifying the statement could only have been to mislead the Committee in its investigation. It was designed to show that the insurance adjuster did not see any statement in Gunter's file dated February 14th, and that his report to his company's attorneys was either false or made in error. If so, the White complaint, predicated on conflict of interest, was without foundation and baseless. It was a material misrepresentation made at a critical stage in the investigatory proceeding being conducted by Watts and Cooley for the Committee.[1]

The evidence of Watts and Gunter's attorneys, and a letter from Burr P. Harrison to Watts dated September 19, 1969, show that the attorneys did represent to Watts and Cooley that they had the White

---

[1] Watts and Cooley were conducting a preliminary investigation of alleged unprofessional conduct by Gunter pursuant to the provisions of Rule 6 IV 13. (205 Va. 1011, 1040). This section sets forth the procedure for disciplining, suspending and disbarring attorneys. A duly constituted Committee of the Virginia State Bar, as was the Seventh District Committee, is authorized in any case of alleged unprofessional conduct by an attorney, to "make such preliminary investigation as may be appropriate". Through the medium of such investigation a number of frivolous and groundless complaints preferred against attorneys are dismissed. The attorney involved is thereby spared the embarrassment and the unwarranted publicity that attends the filing of a formal complaint and a hearing.

statement taken by Gunter; that it bore a date subsequent to February 19, 1968; that the White file which they exhibited to the two committeemen did not contain any statement taken from White prior to February 19th; and that the attorneys did exhibit to them the altered statement, it being the one dated February 20th.

The attorneys concluded that they had a complete defense to the White case and reasoned that by showing that the White complaint was without foundation this would cast a doubt over all other complaints preferred against Gunter. Their strategy succeeded to a degree. As a result of the Harrisonburg meeting, and the representations there made of the nonexistence of any statement from White prior to February 20th, the Committee authorized Watts to join in a motion to continue the Anderson case, and this was done. In addition, they succeeded in having an informal meeting of the full Committee called for September 17, 1969 to consider matters which had come up involving Gunter since July 1st, and to determine whether or not there would be any reconsideration by the Committee of the pending Anderson case.

Watts testified that this September 17th meeting was arranged in order that the same information which had been furnished and exhibited to them in Harrisonburg by Gunter's attorneys could be exhibited to the full Committee. All this was looking to a disposition of the White and other complaints against Gunter.

Further, we do not agree with the trial court that the failure of the Committee to file a formal complaint against Gunter on the conflict of interest matter should be construed as a finding by it that there was no conflict of interest, or that the alteration of the date on the White statement was not material. Such failure by the Committee might have been for several reasons—possibly because the Committee concluded that the falsification of a document was more serious than the conflict of interest charge. In any event, the complaint here involves the falsification of a statement by Gunter and the improper or fraudulent use of the statement to influence the Committee. The evidence was such that the court should not have granted the motion to strike.

■ Gunter's principal assignment of cross-error is that the trial court erred in admitting testimony as to privileged communications between Gunter and his attorneys.

Communications between lawyer and client are privileged to the end that the client be free to make a full, complete and accurate disclosure of all facts, unencumbered by fear that such true disclosure

will be used or divulged by his attorney, and without fear of disclosure by any legal process.

In *Grant* v. *Harris*, 116 Va. 642, 648-49, 82 S. E. 718, 719 (1914), it was said:

> "It is conceded, and if it were not it is well settled, that confidential communications between an attorney and his client made because of that relationship and concerning the subject matter of the attorney's employment, are privileged from disclosure, even for the purpose of administering justice. [Citing cases.]
>
> "This rule of law is for the benefit of the client and may be waived. . . . But no particular formality is essential. It may be expressed or implied from the conduct of the client. [Citing cases.]"

However, there is a wide difference between doing, conspiring and contriving a wrong and in seeking counsel after the wrong is done. The protection which the law affords to communications between attorney and client has reference to those which are legitimately and properly within the scope of a lawful employment and does not extend to communications made in contemplation of a crime, or perpetration of a fraud. *Strong* v. *Abner*, 268 Ky. 502, 105 S. W. 2d 599 (1937). If the client does not frankly and freely reveal his object and intention as well as facts, there is not professional confidence and therefore no privilege. See *Matthews* v. *Hoagland*, 48 N. J. Eq. 455, 21 A. 1054 (1891); *Carney* v. *United R. Co.*, 205 Mo. App. 495, 226 S. W. 308 (1920); Anno., 125 A. L. R. 508 (1940).

The rule of privilege is defensive, not offensive. If the communication between attorney and client relates to unlawful or fraudulent accomplishment, higher public policy, and the duty of an attorney to society as a whole, abrogates the privilege. If the client does not disclose his fraudulent purpose there is no confidential relationship established, and no attaching privilege. *Ex Parte Griffith*, 178 So. 2d 169, 176 (Ala. 1965).

In *Kneale* v. *Williams*, 158 Fla. 811, 818, 30 So. 2d 284, 287 (1947) the court said:

> "[T]he perpetration of a fraud is outside the scope of the professional duty of an attorney and no privilege attaches to a communication and transaction between an attorney and client with respect to transactions constituting the making of a false claim or the perpetration of a fraud."

The following extracts from *8 Wigmore, Evidence* are pertinent here:

> "It has been agreed from the beginning that the privilege cannot avail to protect the client in concerting with the attorney in a *crime* or other evil enterprise. This is for the logically sufficient reason that no such enterprise falls within the just scope of the relation between legal adviser and client. . . ." § 2298, p. 572.
>
> "[T]he object of the privilege . . . is that he [client] should be unhampered in his quest for advice. On the other hand, when he knowingly departs from that purpose and interjects other matters not relevant to it, he is in that respect not seeking legal advice, and the privilege does not design to protect him. . . ." § 2310, p. 599.

We find no error in the action of the trial court in rejecting Gunter's claim of privilege. The communications alleged to be privileged were made in the furtherance of the commission of an intended fraud on the Committee. Further, any privilege involved here was waived by Gunter when he agreed to the strategy of his attorneys to use his file and the falsified White statement of February 20, 1968 to influence the disposition to be made of his cases by the Committee. *See 8 Wigmore, Evidence*, § 2311, at 599, 600, § 2327, at 634–636 (McNaughton rev. ed. 1961); *McCormick, Evidence*, § 95 at 191, § 97 at 196 (1934).

All other assignments of cross-error made by Gunter have been considered and found to be without merit.

The order of the lower court dismissing the complaint filed by the Committee against Gunter is reversed for reasons set forth in this opinion. The case is reinstated on the docket of the court below and is remanded with direction that the trial court reconvene, consider such evidence as may be introduced by Gunter, if any, and rebuttal evidence as may be introduced by the Committee, if any, and make such disposition of the case as may be indicated.

*Reversed and remanded.*