# CIRCUIT COURT OF THE CITY OF WINCHESTER

Shenandoah Publishing
House, Inc.

v.

City of Winchester

March 28, 2000

Case No. (Law) 2000-56

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on March 21, 2000, for trial on a newspaper's petition for a writ of mandamus to release a document pursuant to the Virginia Freedom of Information Act. The parties appeared with their counsel, Wilburn C. Dibling, Esquire, for the Plaintiff; and John W. Zunka, Esquire, for the Defendant. Whereupon the facts were reviewed, and it was determined that there was no dispute about the material facts. The Court examined the document, argument was then heard, and the Court took the case under consideration and now makes the following decision to deny the Petition for a Writ of Mandamus, because the document in question is protected by the attorney-client privilege.

## I. *Statement of Material Facts*

There is no dispute about the following facts.

The complainant Shenandoah Publishing House is a Virginia corporation which publishes the *Northern Virginia Daily*, a daily newspaper of general circulation in the City of Winchester, hereinafter called the *Daily*.

The City of Winchester is a local governmental unit chartered by the Virginia General Assembly.

On March 1, 2000, the City Manager consulted with the City Attorney about concerns which he had about some payroll and personnel issues in the office of a constitutional officer in the City, whose budget is supplemented by the City.

On March 6, 2000, the City Manager gave the City Attorney a report entitled "The Saga Continues" to assist the City Attorney in rendering his opinion on the payroll issues discussed on March 1, 2000.

At the March 8, 2000, meeting of the Finance Committee of the Winchester City Council, a reporter for the *Daily* overheard a conversation between the City Manager and a Councilwoman, incident to which the City Manager handed the Councilwoman a copy of a document entitled "The Saga Continues." At the March 8, 2000, meeting the reporter asked the City Manager about the substance of the document and asked whether he could see it. The City Manager declined to allow the reporter to see the document.

On March 9, 2000, the reporter met with the City Manager and again asked the City Manager about the document and renewed his request to see it, and the City Manager again refused to allow the reporter to see the document. On March 9, 2000, the reporter filed a written Freedom of Information Act request for the document.

On March 10, 2000, the City Manager responded to the written Freedom of Information Act request denying the release of the document on two grounds:

(1) That the report is exempt from disclosure pursuant to Virginia Code § 2.1-342.01(A)(8), because "the report is, in fact, work product compiled specifically for use in an active administrative investigation concerning a matter which is properly the subject of a closed meeting of City Council"; and

(2) That "in addition, I had given a report to the City Attorney on Monday, March 6, 2000, requesting his evaluation of the data as part of an administrative investigation, therefore the report was a record protected by the attorney client privilege at the time when the request was first received. Section 2.1-342.01(A)(7) of the Code exempts such material from disclosure under the Act."

On March 15, 2000, the City Manager met with the City Attorney, and the City Manager reported that the personnel matter had been discussed with the people involved and that it appeared that the matter had been resolved. The City Manager asked the City Attorney to make a presentation to the City Finance Committee in closed session about the resolution of the personnel matter at the regularly scheduled Finance Committee on March 22, 2000.

On March 15, 2000, the Newspaper filed this Petition for a Writ of Mandamus to produce the document entitled "The Saga Continues." At the

hearing, the Court reviewed the document in question *in camera*. The rather intriguing title of the document belies its contents, which are generally an historical account in numbered paragraphs of the City's supplemental funding of the office in question and payroll and personnel levels and changes in that office over a period of years.

## II. *Conclusions of Law*

The Virginia Freedom of Information Act "shall be liberally construed to enable citizens to observe the operations of government and that the exemptions shall be narrowly construed 'in order that no thing which should be public may be hidden from any person'." *City of Danville v. Laird*, 223 Va. 271, 276, 288 S.E.2d 429 (1982); *see also* Virginia Code § 2.1-340.1.

Virginia Code § 2.1-340.1 provides that "Unless the public body [or official] elects to exercise an exemption provided by this chapter . . . all . . . documents and other material shall be available for disclosure upon request." If the custodian of the records "determines that an exemption applies to all of the requested records, it may refuse to release such records and provide to the requesting citizen a written explanation as to why the records are not available with the explanation making specific reference to the applicable Code sections which make the records exempt." Virginia Code § 2.1-342(A)(2). In this case the City Manager decided to exercise an exemption under the Act, and by his March 10, 2000, letter advised the reporter that the "report was work product compiled specifically for use in an active administrative investigation concerning a matter which is properly the subject of a closed meeting of City Council" and that it was "a record protected by the attorney client privilege."

Each claim of privilege for a document is document specific, and a party cannot reasonably respond to a denial of access or the court reasonably rule, unless the existence and general nature of the document is disclosed. If the Court does not have at least a general idea of the contents of the document, it cannot reasonably determine whether it may be in the class of documents potentially exempt from disclosure under the Freedom of Information Act. Accordingly, the Court required the City to generally describe the document at the hearing. *See, e.g.* Supreme Court Rule 4:1(b)(6); and Fed. R. Civ. P. 26(b)(5) (rules prescribing privilege logs in discovery). *But see Concerned Citizens v. Richmond Sch. Bd.*, 43 Va. Cir. 209 (Richmond 1997) (privilege log not required but decided before new Rule 4:1(b)(6)). "Whether a communication is privileged is for the trial court to decide, after being apprised through preliminary inquiry of the characterizing circumstances." 81 Am. Jur. 2d, *Witnesses*, § 357.

In this case, the Court also examined the document in question *in camera* as recommended in *Moore v. Maroney*, 258 Va. 21, 27, 516 S.E.2d 9 (1999). The document in question is a factual chronology outlining a series of events involving city funding and personnel changes and salaries which occurred in the city department in question over a period of years. It is very factual, organized logically, and is typical of a document that a reasonably prudent person would prepare to assist his attorney in efficiently rendering informed legal advice about the events recited in the document. It was prepared specifically for the purpose of consulting with the City Attorney and obtaining a legal opinion about the advisability of an administrative investigation into the facts which precipitated the official's concern.

Virginia Code § 2.1-342.01 exempts certain documents and records from disclosure under the Freedom of Information Act; among those exempted are:

> 7. Written advice of the . . . city . . . attorneys to their local government clients and any other records protected by the attorney-client privilege.

> 8. Legal memoranda and other work product compiled specifically for use in an active administrative investigation concerning a matter which is properly the subject of a closed meeting under § 2.1-344.

The potential exemption from disclosure of some documents under the Act depends upon their relationship to matters which can be discussed in a closed meeting of the City. *See* Virginia Code 2.1-342.01.8. The subjects which may be discussed in a closed session of a public body are enumerated in detail in Virginia Code § 2.1-344, and "specific legal matters requiring the provision of legal advice" is but one of a wide variety of matters which may be discussed in a closed hearing. Closed meetings may be held under Virginia Code § 2.1-344(A)(7) for the purpose of:

> Consultation with legal counsel and briefings by staff members, consultants or attorneys, pertaining to actual or probable litigation, *or other specific legal matters requiring the provision of legal advice by counsel.* [Emphasis added.]

Accordingly, the City Finance Committee may adjourn into a closed session as contemplated on March 22, 2000, to discuss the legal advice which the City Attorney rendered on the issues presented in the "The Saga Continues" document.

Virginia Code § 2.1-342.01.7 specifically exempts from disclosure under the Freedom of Information Act "other records protected by the attorney-client privilege," which is a privilege which does not depend upon whether the subject matter is an issue which may be discussed in a closed meeting under § 2.1-344. The statute does not define the attorney-client privilege, so it clearly contemplates that privilege as it has been developed in the courts of Virginia. As Professor Friend notes in his seminal work on evidence, C. Friend, *The Law of Evidence in Virginia* § 7-3 (5th ed. 1999), the conditions for the application of the attorney-client privilege are:

(1) An attorney-client privilege must have existed at the time of disclosure;

(2) The communication must have been made in confidence;

(3) The communication must relate to the matter or matters about which the attorney was consulted; and

(4) The communication must have been made while consulting with the attorney for a proper purpose.

In this case, all four conditions for the invocation of the privilege have been met. The fact that the City Manager showed the document to a Councilwoman does not abrogate the privilege, because the Councilwoman, by definition, is a member of the City's control group, and she is entitled to see a confidential document without vitiating the attorney-client privilege which attaches to the document.

As Justice Robert H. Jackson noted in *Hickman v. Taylor*, 329 U.S. 496, 514-515, 91 L. Ed. 451, 464 (1947) (concurring):

> [I]t too often is overlooked that the lawyer and the law office are indispensable parts of our administration of justice. Law abiding people can go nowhere else to learn the ever changing rules by which they must behave and to obtain redress for wrongs.

The universe of the law has expanded geometrically since Justice Jackson made his observation at mid century, and a modern city faces a maze of state and federal laws and regulations with which it must comply, many of which did not even exist sixty years ago. Apropos to this case is the fact that the Virginia Freedom of Information Act was not enacted until 1968, and the exact perimeters of the Act are still a matter of legal dialogue and court interpretation. Given the contents of the document and the fact that one of the reasons given for not disclosing the document was that it was "compiled for use in an active administrative investigation," it can be inferred that the City Manager may well have consulted with the City Attorney to see whether the

matter merited further investigation and whether the matter was within the purview of Virginia Code § 2.1-344(A)(1), which provides that a closed meeting may be held to discuss the "assignment, appointment, promotion, performance, demotion, salaries, disciplining or resignation of specific public officers, appointees or employees of any public body . . . ."

In order to lawfully conduct the city's business, city officials must be able to consult in confidence with the city attorney. The fact that in the course of the investigation and analysis of the matter, it is determined that it might not properly be the subject of an "active administrative investigation" does not preclude a threshold, confidential discussion about the issues under scrutiny and the purview of the Freedom of Information Act between the City Manager and the City Attorney. At some point, the City Attorney may well have shown the City Manager the Attorney General's Opinion, 1998 Report of the Attorney General, p. 8 (authority of city council to meet in executive session to discuss personnel issues is limited to persons employed or appointed by the city council), which the Newspaper cited to the Court, or independently reached the same conclusion and that may be the reason that the matter was not pursued.

In order to lawfully conduct the city's business, city officials must be able to consult in confidence the city attorney or any other attorney with whom they consult for legal advice. "Communications between lawyer and client are privileged to the end that the client be free to make a full, complete and accurate disclosure of all facts, unencumbered by fear that such true disclosure will be used or divulged by his attorney, and without fear of disclosure by any legal process." *Seventh Dist. Comm. v. Gunter*, 212 Va. 278, 286-87, 183 S.E.2d 713 (1971). Consequently, a city official may communicate in confidence with the city attorney about a legal problem real or imagined. Frequently, lay persons consult with their attorneys to ascertain whether they actually have a legal problem, and the test of whether they may consult with their attorney in confidence derives from the relationship of the parties as attorney and client. The General Assembly expressly exempted information conveyed within the context of the attorney client privilege from mandatory disclosure under the Freedom of Information Act.

The work product privilege is a variation of the attorney-client privilege provided to the party and to the party's attorney, and it is limited to "documents and tangible things . . . prepared in anticipation of litigation." *See generally Duplain Corp. v. Moulinage et Retorderie de Chavanez*, 509 F.2d 730, 747 (4th Cir. 1974). It only applies to documents, and it also may apply to a document whose creation predates the inception of the formation of the attorney-client relationship. "Although the delivery of a document by a client

to his attorney may constitute a privileged communication to the attorney, records, papers, and documents which are not privileged [when they are created] cannot be made so by the simple expedient of delivering them to counsel." 81 Am. Jur. 2d, *Witnesses*, § 407. But "[a]n instrument which itself constitutes a communication between an attorney and client and owes its existence to an effort to transmit information from one to the other is privileged to the same extent as any other communication between attorney and client." 81 Am. Jur. 2d, *Witnesses*, § 403. In this case the document did not exist before the formation of the concern over the issues described in the document. There is a natural evolution in the development of a legal issue, and a party is free to discuss in confidence with his attorney a nascent concern of a legal nature. In this case the document was prepared to see whether the matter should be pursued; therefore, it was prepared in anticipation of a potential "active administrative investigation," and the fact that the administrative investigation may never come to fruition does not vitiate the cloak of confidence shielding the document from public scrutiny. Having examined the document *in camera*, there is no doubt but that it was the work product of a city official given in confidence to the City Attorney so that legal advice could be obtained. Accordingly, it is protected by Virginia Code § 2.1-342.01.7.

The City has a legitimate interest in reviewing the use of funds which it appropriates to supplement the operation of a City office. As of March 8, 2000, the matter was in the preliminary stages of investigation and legal analysis by the City Attorney. The reason that the legal counsel of the City Attorney was sought was to ascertain whether in fact this was a matter about which the City should be actively concerned and what recourse if any was available. The fact that, after analysis, the matter may have been closed without action has no effect on the right of the City Manager to discuss his concerns in confidence with the City Attorney and then having the City Attorney report on his legal analysis of the City Manager's concerns in a closed session of the City Finance Committee.

## III. *Decision*

For the foregoing reasons it is adjudged and ordered that the Petition for a Writ of Mandamus is denied, and each party shall pay their respective attorney's fees and costs.