# CIRCUIT COURT OF FAIRFAX COUNTY

Northern Virginia
Real Estate, Inc., et al.

v.

Karen Martins et al.

June 29, 2010

Case No. CL 2007-8717

BY JUDGE JONATHAN C. THACHER

This matter comes to the Court on Defendants' Motions for Sanctions. The Court previously found that the actions of Plaintiffs and their counsel, throughout the prosecution of the underlying case, were sanctionable. After considering the pleadings, the evidence, the oral and written arguments of counsel, and the relevant legal authority, the Court finds that the appropriate sanction is the reasonable attorney's fees and costs incurred by Defendants. The Court also finds that Plaintiffs and their counsel are jointly and severally liable for the sanctions.

## Background

Plaintiff Northern Virginia Real Estate, Inc. ("NVRE") is a real estate broker operating in northern Virginia. Plaintiff Lauren Kivlighan is a real estate agent and the owner of NVRE. Both Plaintiffs were originally represented in this matter by Forrest Walpole.

Defendant McEnearney Associates, Inc. ("McEnearney") is also a real estate broker operating in northern Virginia. Defendant Karen Martins is a real estate agent associated with McEnearney. McEnearney and Ms. Martins are represented in this matter by Sands Anderson, P.C., and by Barbara Beach, who serves as McEnearney's general counsel. Defendants Donna Gavin and David Gavin are a married couple residing in Virginia. They are represented in this matter by the law firm Brincefield Hartnett, P.C.

Plaintiffs filed a multi-count lawsuit ("the Underlying Action") arising out of their alleged agreement with the Gavins to sell the couple's home ("the Property"). At the time of the initial agreement between Plaintiffs and the Gavins, Plaintiffs already had spoken with Osman Alnifaidy, who offered to purchase the Property as a "pocket buyer." As a result, Plaintiffs expected to capture a full six percent commission on the sale of the Property by representing both the seller and the pocket buyer. The relationship, however, between the Gavins and Plaintiffs turned sour. As a result, the Gavins engaged McEnearney to sell their home to another buyer.

Plaintiffs then filed the Underlying Action, which alleged conspiracy to do harm in business, interference with contract expectancy, and defamation. Defendants filed an Answer, which requested a reply from Plaintiffs, in accordance with Rules 3:11 and 1:4(e) of the Rules of the Supreme Court of Virginia, as to a pleading admission. Plaintiffs failed to respond.

The matter came before the Court for a jury trial. As a preliminary matter, the Court granted Defendants' motion *in limine* and deemed the Plaintiffs to have admitted the unanswered pleading admission. The admission stated that "[n]either Plaintiff ever had a contract with the owner of the Subject Property, nor did either Plaintiff have a reasonable contractual or business expectancy which could support a claim of tortious interference."

Despite this rather damaging admission, Plaintiffs insisted on proceeding with a three day jury trial. After the close of Plaintiffs' evidence on the second day, Defendants moved to strike the evidence. While the motion was pending, Plaintiffs exercised their right to a voluntary nonsuit. The nonsuit was suspended pending Defendants' motions for sanctions.

The Court later heard evidence and argument as to whether Plaintiffs or Mr. Walpole violated Va. Code § 8.01-271.1 ("Statute") in prosecuting the Underlying Action. Following that hearing ("Sanctions

Hearing"), the Court found that Plaintiffs and their counsel violated the Statute. Specifically, the Court found that the Underlying Action was a combination of frivolous claims supported by wild speculation and virulently prosecuted even after any legitimate prospect of success had vanished. Moreover, the Court found that the action was filed out of a vindictive and malevolent desire to injure and intimidate a business competitor. The basis for the Court's decision to order sanctions and the full background of the underlying lawsuit between the parties is fully discussed in the Court's letter opinion of March 17, 2009.

While the Court decided that Plaintiffs and Mr. Walpole violated the Statute, the record was insufficient to determine the appropriate size of the sanction. As a result, the Court set a second hearing to establish whether Defendants' claimed expenses are reasonable and whether they are related to Plaintiffs' violations of the Statute.

At this hearing, the Defendants submitted bills for their legal fees and costs to the Court. They also called expert witnesses who testified to the reasonableness of the fees they incurred. Mr. Walpole's counsel called an expert witness who challenged the reasonableness of the fees incurred by Defendants in this matter. Plaintiffs also contended throughout the hearing that they should not be sanctioned at all for the manner in which the Underlying Action was prosecuted. Instead, Plaintiffs claim that they were merely acting on the advice of counsel and are not in violation of the Statute.

## Analysis

### A. Sanctions against the Represented Parties

#### 1. Liability of Represented Parties for Violations of the Statute

Essentially, Plaintiffs argue that a party who acts on advice of counsel has a safe haven from sanctions. Furthermore, they contend that holding represented parties liable for sanctions under the Statute would have a chilling effect on the litigation process.

This argument ignores the plain language of the Statute, which states that "[i]f a pleading, motion, or other paper is signed or made in violation of this rule, the court. . . shall impose upon the person who

signed the paper or made the motion, a represented party, or both, an appropriate sanction. . . ." Va. Code Ann. § 8.01-271.1. Lawyers and their clients are both required to act appropriately, ethically, and within the confines of the law when litigating cases in Virginia courts. Even represented parties are expected to be active participants in the litigation process. There is no safe harbor for parties who act improperly, even upon the advice of their lawyers. Here, as in other areas of law, ignorance of the law is not an excuse.

The Court does not contend that the advice of counsel is never relevant to the question of whether the party acted in violation of the Statute. Nothing prohibits a party from waiving the attorney-client privilege to show that their actions were manifestly reasonable and not in violation of the Statute, as indeed Plaintiffs have attempted to do through their witnesses in this matter. The Court, however, finds that Plaintiffs are as culpable as their lawyer on this case.

### 2. *Plaintiffs' Violations of the Statute*

The Statute requires that:

> [E]very pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name. . . .
> The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . .
> If a pleading, motion, or other paper is signed or made in violation of this rule, the court upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading,

> motion, or other paper or making of the motion, including a reasonable attorney's fee.

*Id.* An objective standard of reasonableness is used to determine whether litigants and attorneys, after reasonable inquiry, could have formed a reasonable belief that their pleadings were well grounded in fact. *Ford Motor Co. v. Benitez*, 273 Va. 242, 253, 639 S.E.2d 203, 208 (2007).

Plaintiffs argue that there is no evidence of wrongdoing on their part. Instead, they contend that Mr. Walpole alone is culpable for the sanctionable behavior. It was he, according to Plaintiffs, who made the tactical decisions during the litigation, which ultimately resulted in sanctions. Ms. Kivlighan argues that she was innocently following the advice of Mr. Walpole throughout the prosecution of the Underlying Action.

The Court finds that the record does not conform with Plaintiffs' theory of the case. Instead, there is substantial evidence of sanctionable behavior on the part of both the litigants and the lawyer. The evidence has established that Ms. Kivlighan went to another lawyer, who advised her of a reasonable remedy that she may have had in this matter, a breach of contract action. That was simply not enough for Plaintiffs, and they continued to shop their case. Mr. Walpole offered Plaintiffs a grab bag of remedies. He then filed suit on behalf of Plaintiffs based upon these remedies, with a lack of basis in law or fact.

Ms. Kivlighan was not a passive participant in this process. On the contrary, her actions showed a clear intent to support these claims, which were speculative at best. For example, one of Ms. Kivlighan's claims against Defendants was for a commission from a second sale of the Property an indefinite number of years in the future. This claim was based upon her contention that she was almost certain to obtain the listing for the Property again after a new house was built. Her deposition testimony established that she lacked a factual basis to advance this theory. Furthermore, the testimony of Mr. Alnifaidy, both in his deposition and at trial, established that he had never engaged her as an agent to re-sell the Property again in the future. Indeed, Ms. Kivlighan later admitted at trial that she was not engaged to re-sell the Property. Her trial testimony also established her lack of any factual basis that she was defamed by Ms. Martins.

Moreover, her actions throughout the litigation are indicative of and establish the improper purpose with which she filed this lawsuit. She was non-responsive to counsels' questions both at her deposition[2] and when she took the witness stand throughout this litigation. Ms. Kivlighan's testimony even at this hearing was evasive and misleading at times. For example, she first testified that she only spoke to Mr. Walpole and Jerome Friedlander about the issues involved in the Underlying Action before filing suit. Defense counsel asked her if she spoke to other attorneys about the matter. She unequivocally denied such conversations. She was forced, however, to admit that this assertion was inaccurate and that she spoke to at least one other attorney, Mr. Dan Goodwin, about the case. She attempted to justify the omission by claiming that she never attempted to retain Mr. Goodwin. The Court, however, is not impressed by the excuse and notes yet another example of her lack of candor on the witness stand. During her deposition, when she did choose to answer questions, she was often evasive, disingenuous, and misleading.

Ms. Kivlighan's behavior during her testimony at the aborted trial was equally elusive. Instead of answering the questions posed to her by counsel, she constantly engaged in diatribes which were non-responsive and irrelevant. It is clear from her behavior on the witness stand that she possesses a vendetta against Defendants. Indeed, this behavior, taken with her other actions, convinces the Court that she filed this lawsuit out of a vindictive and malevolent desire to injure each of the Defendants and to intimidate a business competitor. Moreover, her behavior is indicative of the lack of a factual basis for bringing the Underlying Action.

### 3. Attorney-Client Privilege

According to Plaintiffs, their purposes for bringing this lawsuit and the factual basis they had when the Complaint was filed are protected by the attorney-client privilege. As a result, they contend that Plaintiffs'

---

[2] Plaintiffs' counsel concedes that there is evidence that Ms. Kivlighan was recalcitrant in answering questions in depositions. Plaintiffs argue, however, that neither a motion to compel nor a motion for discovery sanctions was brought as a result of the depositions. They contend that sanctions under the Statute are an inappropriate method of penalizing such behavior. The Court is not issuing discovery sanctions under the guise § 8.01-271.1. sanctions. Instead, the Court finds Ms. Kivlighan's behavior at her deposition is further evidence of her improper motives for bringing this lawsuit as well as the lack of a factual basis for her claims.

behavior should not be considered by the Court. Finding that a party had an improper purpose or lack of basis in fact when filing a lawsuit, they argue, would require the Court to invade the privilege. They also claim that they should not be sanctioned for relying upon the advice of their attorney as to the legal remedies under which they chose to file suit.

Confidential communications between an attorney and a client concerning matters for which the attorney has been engaged by that client are privileged from disclosure. *Seventh District Committee v. Gunter*, 212 Va. 278, 287, 183 S.E.2d 713, 719 (1971). This rule of law is for the protection of the client, who may waive the privilege through express or implied conduct. *Id.*

Protected communications between Plaintiffs and their attorney were not wrongly invaded when the Court found that Plaintiffs violated the Statute. In fact, the Court has not relied upon privileged communications between Plaintiffs and their counsel. Instead, the Court relies upon the evidence in the record which establishes that Plaintiffs acted improperly. Moreover, if Plaintiffs contend that Mr. Walpole improperly allowed privileged communications to be admitted into evidence, then their remedy lies with another court on another day. The evidence considered at the Sanctions Hearing was properly introduced and considered by the Court. If any of the information considered at that hearing was originally protected by privilege, the protection was waived when it was brought into evidence without objection. Simply put, the genie is out of the bottle.

### 4. *American Rule*

Plaintiffs also contend that the imposition of sanctions in this matter would compromise the long standing "American rule," which generally requires litigants to bear their own attorney's fees, regardless of the outcome. *Lannon v. Lee Conner Realty Corp.*, 238 Va. 590, 594, 385 S.E.2d 380, 383 (1989). Plaintiffs' argument is not compelling. It is true that Virginia courts adhere to the American rule, and parties are usually required to bear their own legal fees, unless there is a contractual or statutory provision to the contrary. *Id.* A party cannot, however, violate the laws of the Commonwealth while prosecuting a civil action in her courts and then seek shelter under the American rule. By violating the Statute, the party sacrifices the protection of this ancient rule.

Both Mr. Walpole and Plaintiffs violated the Statute during this litigation. As a result, the Court finds that the appropriate sanction is to

hold both Mr. Walpole and his clients jointly and severally liable for the reasonable attorney's fees and costs of Defendants.

## B. *Reasonableness of Defendants' Fees*

Having determined the appropriate sanction against Plaintiffs and Mr. Walpole, the Court must determine the reasonable attorney's fees incurred by Defendants. The party seeking to recover attorney's fees must establish the reasonableness of the fees. *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 623, 499 S.E.2d 829, 833 (1998). In determining whether such fees were reasonably incurred, the Court considers, among other things, the time and effort expended by the attorneys, the nature, complexity, and value of the services, the result of the case, whether the fees were consistent with those generally charged for similar services, and whether the services were necessary and appropriate. *Id.* The Court considers the testimony of attorneys along with its own experience and knowledge of the character and services rendered by counsel in determining the reasonableness of the attorney's fees. *Holmes v. LG Marion Corp.*, 258 Va. 473, 479, 521 S.E.2d 528, 533 (1999).

The Martins and McEnearney Defendants called David Mercer to testify as to the reasonableness of their legal fees. James "Beau" Brincefield testified as to the reasonableness of the attorney's fees incurred by the Gavins. Each Defendant provided the Court with the substantial legal bills that they incurred as a result of the litigation initiated by Plaintiffs.

The Gavins also, however, incurred a comparatively small amount of fees as a result of a counterclaim brought by them against Plaintiffs. Because the fees relating to the counterclaim were not a result of the improper action brought by Plaintiffs, the Court will not require that the Gavins be reimbursed for the fees arising from the counterclaim.

Plaintiffs and Mr. Walpole make several arguments against the reasonableness of the Defendants' attorney's fees. Plaintiffs and Mr. Walpole do not question the reasonableness of the billing rate of Defendants' counsel. Indeed, they stipulate that the rates were quite reasonable. The only question remaining is whether the number of hours spent on the case was reasonable. They argue that counsels' fees were unreasonable both because the lawyers failed to mitigate the damages and because counsel used block billing practices. They further argue that the fees incurred by all Defendants were excessive.

## 1. *Mitigation of Damages*

According to Plaintiffs and Mr. Walpole, Defendants should have mitigated the damages by attempting to bring a swift end to the frivolous litigation. They argue that this could have been accomplished by moving for summary judgment before trial. Specifically, they argue that Defendants could have moved for summary judgment based upon Plaintiffs failure to reply to the Answer as required by Rule 3:11. The factual assertion in the Answer stated that "[n]either Plaintiff ever had a contract with the owner of the Subject Property, nor did either Plaintiff have a reasonable contractual or business expectancy which could support a claim of tortious interference." By failing to reply to this statement, Plaintiffs and Mr. Walpole argue that the case was essentially over. According to them, Defendants should have saved everyone else the trouble and the money by moving for summary judgment. The Court disagrees.

Summary judgment is a drastic remedy in Virginia. *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88, 677 S.E.2d 272, 274 (2009). Certainly, this case would have been a prime candidate for summary judgment. The Court, however, cannot say that the decision to bring a motion *in limine* on the morning of trial instead of a motion for summary judgment in the months leading up to trial was unreasonable. Such decisions are tactical choices to be made by lawyers in consultation with their clients. The Court will not use the benefit of hindsight to judge litigation strategy after the fact. To do otherwise could provide lawyers with incentives which would increase, rather than decrease, the cost of litigation. Indeed, attorneys would be pressured to file any and every conceivable pre-trial motion that could possibly result in an early victory. Should they not file such motions, their fees could be deemed unreasonable. Such a perverse incentive would only serve to drive up the cost of litigation and to unnecessarily deplete court resources. Instead of filing a motion for summary judgment, they waited until trial to play the ace dealt to them by Plaintiffs. This perfectly acceptable strategy does not free Plaintiffs and Mr. Walpole from their liability for needlessly bringing the frivolous litigation in violation of the Statute. In fact, it was Plaintiffs and Mr. Walpole who failed to mitigate the damages in this case. Besides filing a frivolous suit in the first place, they also drove up the costs of litigation by continuing to try their case even after the Court granted the motion *in limine* on the first day of trial. In granting the motion, Plaintiffs were prohibited from introducing any evidence relating to a contract with the Gavins and any evidence relating

to any reasonable contractual or business expectancy which could support a claim of tortious interference. This eviscerated what little was left of Plaintiffs case, yet they proceeded through three days of trial before finally taking a nonsuit.

## 2. *Block Billing*

Counsel for both the Martins and McEnearney Defendants and the Gavins Defendants used block billing. Mr. Walpole's expert witness, Richard Driscoll, claims that block billing is *per se* unreasonable. Block billing is the time-keeping method by which both attorneys and law firm staff enter the total daily time spent working on a case, rather than itemizing the time expended on specific tasks. *McIntyre v. Aetna Life Ins. Co.*, 586 F. Supp. 2d 638, 641 (W.D. Va. 2008) (*citing Robinson v. Edmond*, 160 F.3d 1275, 1284-85 (10th Cir. 1998)). Mr. Driscoll argues that this practice is flawed because of its supposed tendency to mask inefficiency and overbilling. As an example, Mr. Driscoll points out that the exact amount of time spent by the Gavins' counsel on preparing jury instructions is difficult to determine with any certainty. In fact, because block billing was used, it is impossible to determine whether the Gavins' lawyers spent approximately 30 hours or 130 hours preparing jury instructions for the trial.

On this question, which is a matter of first impression in Virginia, there is a tension between a common, accepted, and often efficient billing practice[3] used by many Virginia law practices and the burden of the party seeking attorney's fees to make a *prima facie* case of reasonableness. In balancing these tensions, the Court will employ its discretion. When tasks are reasonably listed in block listings, in a manner that provides a rational summary of the time spent on various projects, the Court will accept the block billing summary as reasonable. If, however, the delta between the possible time spent on specific tasks is so vast as to be reasonable on one end and manifestly unreasonable on the other, then the Court is compelled to find that the moving party has not met its burden. In such cases the Court will adjust the time listed in the block summaries. The Court will consider both the maximum reasonable fees incurred for the task in

---

[3] It is quite conceivable that should many firms abandon block billing, the administrative costs of time-keeping by firm attorneys and staff members would increase. This increase in cost would inevitably be borne by clients.

question in addition to the other substantive tasks included in the block summaries at issue. Using its experience and knowledge, the Court will then determine the reasonable fees incurred in the block summaries at issue.

The Court finds that the block billing in this case was reasonable, with a single exception: the Gavins' counsels' billing for jury instructions. As Plaintiffs and Mr. Walpole point out, because of the block billing, the range of time spent by Gavins' counsel on the preparation of jury instructions is difficult to determine from the bills submitted to the Court. In fact, the range is between approximately 30 and approximately 130 hours spent by the attorneys on the preparation of jury instructions.

It is certainly true that the preparation of proposed jury instructions is often a complex and important part of trial preparation. Indeed, it is the method by which the trier of fact will apply the law to the facts of the case. Moreover, it is often a heavily litigated issue, both at trial and on appeal. Still, billing nearly 130 hours on jury instructions in this case is excessive. Many of the block entries, however, include other substantive tasks, such as preparing legal memoranda, researching substantial legal issues, corresponding with the Gavins, and preparing a trial strategy.

In this case, the Court finds that the block billing for jury instructions is excessive. The Court also finds, however, that the reduction of time for block billing entries, which includes jury instructions, is mitigated due to the other important tasks also included in the block entries. As a result, the Court finds that the Gavins' reasonable attorney's fees for block entries which include the preparation of jury instructions are $19,638.00.

### 3. *Martins and McEnearney Defendants*

Plaintiffs and Mr. Walpole argue that the Martins and McEnearney Defendants' fees were unreasonable because (1) Ms. Beach, who is general counsel to McEnearney, did not sufficiently participate in this matter; (2) the time billed by counsel for researching and drafting jury instructions was excessive; and (3) the time spent in deposing Ms. Kivlighan was excessive.

They argue that Ms. Beach's bills were unreasonable because she offered no substantive participation at depositions, her participation at the trial and the first sanctions hearing was limited, and the only pleading she authored was a fee affidavit. The Court finds little support for these arguments. Ms. Beach is McEnearney's general counsel. Her familiarity

with the organization was likely vital to the preparation of their defense in this matter. This is mitigated neither by the fact that she authored only a single pleading nor by the fact that she had a limited role in the courtroom. Experienced litigators are well aware of the value of knowledgeable and savvy attorneys working behind the scenes. Moreover, the Court finds that the number of hours that she billed to her clients and the rate she charged was quite reasonable.

Plaintiffs and Mr. Walpole also claim that the time billed for the research and drafting of jury instructions by Sands Anderson, P.C., which also represented the Martins and McEnearney Defendants, was excessive. The Court finds nothing excessive about the less than eight hours spent by the firm on the research of jury instructions.

Moreover, Mr. Driscoll testified that the time spent by the Martins and McEnearney Defendants on Ms. Kivlighan's deposition was excessive. This contention, however, was effectively rebutted upon cross-examination when Mr. Driscoll acknowledged that the fees incurred by Ms. Kivlighan's three day deposition were incurred largely because of Ms. Kivlighan's non-responsive and evasive testimony, in addition to the need to examine her regarding the factual basis for the dozen counts which she alleged in the suit, which were later determined by the Court to be factually frivolous at best. As an example, Ms. Kivlighan originally alleged that she had a contract with Mr. Alnifaidy to re-sell the Property at an unknown point in the future. Defendants were forced to expend time and resources dispelling this inaccurate assertion.

It is true that this would have been a simple case if Plaintiffs had brought an action for which they had a basis in law and fact. Instead, they unnecessarily complicated the matter by bringing an action without such a basis. As a result, the litigation became quite complex. The unnecessary complexity of the litigation required counsel for Defendants to spend a great deal of time on the matter. Still, counsel for the Martins and McEnearney Defendants handled the litigation efficiently and ably. Moreover, the end result was favorable for their clients.

After thoroughly reviewing Ms. Beach's bills and the Sands Anderson, P.C., bills, the Court finds that the time billed by the attorneys to the Martins and McEnearney Defendants were reasonable in this matter. The Court has found few examples of excessive or duplicative billing.

The Court concludes that that the Martins and McEnearney Defendants incurred $97,295.00 in reasonable attorney's fees and $16,483.06 in costs in defending against the Underlying Action. As a result, Plaintiffs and Mr. Walpole are sanctioned the amount of

$113,778.06 for violating the Statute with respect to the Martins and McEnearney Defendants.

### 4. *Gavin Defendants*

Plaintiffs and Mr. Walpole argue that the quantum of time spent on this case by the attorneys at Brincefield Hartnett, P.C., was excessive. Specifically, they claim that there was duplicative work performed by multiple attorneys. They further contend that research was done by a senior partner, who bills his time at a rate substantially higher than the rate of the firm's associates who could have conducted the research at a substantially lower billing rate. They also argue that it was inappropriate for an attorney to charge the Gavins for an hour and a half worth of work to file pleadings with the Court. Finally, they argue that the Gavins' attorneys billed over twice as many hours to their clients as the lawyers for the Martins and McEnearney Defendants billed.

The Gavins, on the other hand, argue that the substantial amount of time consumed on this case was largely a result of the sanctionable behavior of Plaintiffs and Mr. Walpole. As an example, they claim that the fees and costs associated with Ms. Kivlighan's extended deposition resulted from the fact that she refused to properly respond to counsels' questions during the three days it took to properly depose her. They also argue that they billed their time efficiently throughout the litigation.

The Court has thoroughly reviewed the bills from Brincefield Hartnett, P.C. As previously discussed, the Court finds that, on the whole, the billing from Brincefield Hartnett, P.C., was reasonable. Like their co-counsel, the Gavins' lawyers handled the litigation ably and obtained a favorable result for their clients. As previously discussed, this litigation was unnecessarily complicated by the frivolous nature of the claims. Still, the Court does find some excess in the bills from the Gavins' lawyers. The excessive entries for the preparation of jury instructions has previously been discussed. Moreover, the Court finds that there were several instances of duplicative and excessive billings to the Gavins. For example, there are many entries for conferences between lawyers in the preparation for the litigation. It is certainly true that attorneys must often meet with each other to prepare for trial. Once again, there is nothing unreasonable *per se* with charging for the time of each lawyer in such meetings. The number and lengths of the conferences charged to the Gavins, however, was excessive. The Court also notes that the amount of hours billed by the Gavins' lawyers was substantially more than those billed by the lawyers

for their co-defendants. While this comparison is not indicative in and of itself that the fees were not reasonably incurred, it is another factor that convinces the Court of the need to adjust the fees awarded to the Gavins.

The Court finds that the Gavins incurred $145,566.00 in reasonable attorney's fees in this matter and $12,752.40 in costs. As a result, Plaintiffs and Mr. Walpole are sanctioned the amount of $158,318.40 for violating the Statute with respect to the Gavins Defendants.

*Conclusion*

The Plaintiffs and Mr. Walpole violated the Statute when they filed the Underlying Action for an improper purpose and without a proper basis in law and in fact. As a result of this finding, the Court is required to impose sanctions on both Plaintiffs and Mr. Walpole. The Court finds that the proper sanction in this case is an award of reasonable attorney's fees and costs to the Defendants. Plaintiffs and Mr. Walpole shall reimburse the Martins and McEnearney Defendants $113,778.06 for their reasonable attorney's fees and costs. Plaintiffs and Mr. Walpole shall also reimburse the Gavins $158,318.40 for their reasonable attorney's fees and costs. These sanctions are joint and several against Plaintiffs and Mr. Walpole and must be paid within ninety days.

*Order*

This matter came to be heard upon Defendants' Motions for Sanctions; and it appearing to the Court that for the reasons stated in the Court's Letter Opinions of March 17, 2009, and June 29, 2010, that Plaintiffs Northern Virginia Real Estate, Inc., and Lauren Kivlighan (together as "Plaintiffs") and their attorney Forrest Walpole violated Va. Code § 8.01-271.1 in the manner in which they prosecuted this litigation against Defendants McEnearney Associates, Inc., Karen Martins, Donna Gavin, and David Gavin (together as "Defendants"); it further appearing to the Court for the reasons stated in the Court's Letter Opinion of June 29, 2010, that the appropriate sanction against Plaintiffs and Mr. Walpole is the costs and reasonable attorney's fees of Defendants, it is therefore ordered that Defendants' Motions for Sanctions are granted; it is further ordered that Plaintiffs and their attorney shall pay the costs and reasonable attorney's fees of Defendants McEnearney Associates and Karen Martins in the amount of $113,778.06 within ninety days; it is further ordered that Plaintiffs and their attorney shall pay the costs and reasonable attorney's

fees of Defendants Donna and David Gavins in the amount of $158,318.40 within ninety days; it is further ordered that Plaintiffs and Mr. Walpole are jointly and severally liable for these sanctions; it is further ordered that the Court's Order of May 14, 2009, and the Court's Letter Opinions of March 17, 2009, and June 29, 2010, are incorporated into this Order; it is further ordered that the Court's suspension of Plaintiffs' nonsuit taken on April 29, 2008, is lifted. This cause is final.