COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:    Judges Chaney, White and Senior Judge Annunziata
Argued by videoconference


COURTNEY R. HERBERT

                                                    OPINION BY
v.        Record No. 1847-22-4          JUDGE VERNIDA R. CHANEY
                                            FEBRUARY 25, 2025

GUY R. JOUBERT


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Grace Burke Carroll, Judge

    Scott A. Surovell (Nathan D. Rozsa; Surovell Isaacs & Levy PLC,
    on briefs), for appellant.

    Sonya L. Powell (Keenan R. Goldsby; Powell Radomsky, PLLC, on
    brief), for appellee.


        Courtney Herbert (mother) appeals an order modifying her ex-husband's, Guy Joubert

(father), child support obligation, assigning six errors to the circuit court—which we address as five

arguments.  First, she alleges that the circuit court erred in excluding the parties' 2021 Payroll

Protection Program loans from the presumptive child support calculation.  Second, she argues that

the circuit court erred in determining her attorney fees award.  Third, she contends that the circuit

court erred by incorrectly finding that father did not owe arrearages for unreimbursed medical

expenses.  Fourth, she asserts that the circuit court erred by improperly finding that mother required

eight rather than ten hours a week of work-related childcare.  Fifth, she maintains that the circuit

court erred by refusing to modify its March 2019 ruling on the payment of unreimbursed medical

expenses, extracurricular activities, and private school tuition.

        While we disagree with mother's second, fourth, and fifth arguments, we agree with her first

and third arguments.  This Court, therefore, affirms in part, reverses in part, and remands with

instructions for the circuit court to recalculate the presumptive child support amount and to determine the arrearages owed by father for unreimbursed medical expenses.

BACKGROUND[1]

The parties are divorced and share custody of their two minor children. Mother owns a dermatology practice while father is a 35% shareholder in a company that provides litigation support services. On March 8, 2019, the circuit court entered a final child support order, ordering father to pay $6,069 in monthly child support. The order directed the parties to pay unreimbursed medical expenses incurred from in-network medical providers in proportion to their respective incomes, with mother paying 15.6% and father paying 84.4%. However, the court ordered the parties to pay medical expenses incurred from out-of-network providers on a 50-50 basis beginning December 20, 2019. The court's order also incorporated the parties' agreement[2] to pay private school tuition on a 60-40 basis, with father paying 60% and mother paying 40%. The circuit court also ordered the parties to share extracurricular expenses on a 50-50 basis.

On June 19, 2019, on mother's motion to reconsider, the court issued a letter opinion again stating that its order directing the parties to split out-of-network medical expenses on a 50-50 basis did not go into effect until December 20, 2019. For out-of-network expenses incurred before December 20, 2019, the circuit court ordered father to pay 74.3% of the expenses and mother to pay 25.7%.

On April 23, 2020, father moved the circuit court to modify the 2019 child support order because his income had declined by more than 50% in the prior year due to the COVID-19

---

[1] The record in this case is sealed. "To the extent that certain facts mentioned in this opinion are found in the sealed portions of the record, we unseal only those portions." *Chaphe v. Skeens*, 80 Va. App. 556, 559 n.2 (2024) (quoting *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 n.1 (2022)).

[2] The parties originally agreed to the tuition arrangement in a custody settlement agreement dated April 21, 2016.

pandemic and other circumstances. On November 19, mother filed an answer and counterclaim requesting an upward modification of child support, payment of arrearages that father allegedly owed for unreimbursed medical expenses, and attorney fees.

In 2020 and 2021, both parties applied for and received loans under the Paycheck Protection Program (PPP), implemented by the United States Small Business Administration (SBA) under the CARES Act, to mitigate the effect of the COVID-19 pandemic on their businesses. In 2020, mother received a PPP loan for $54,000, and father received a PPP loan for $422,800. In 2021, mother received a second PPP loan for $54,000, while father's second loan was $420,000. The SBA forgave father's first PPP loan, and both of mother's PPP loans in 2021. The SBA forgave father's second PPP loan in 2022.

On May 16, 2022,[3] the parties convened for an evidentiary hearing on father's motion to modify child support. During the hearing, the court considered whether the parties' PPP loans could be counted as income in any year for the purposes of calculating support, whether father owed arrearages for unreimbursed medical expenses, and the amount of work-related childcare that mother required per week. The court also considered whether a material change in circumstances justified modification of its March 2019 order relating to the payment of unreimbursed medical expenses, extracurricular expenses, and private school tuition. Lastly, the court considered mother's request for an award of attorney fees incurred in the matter.

The circuit court reviewed the evidence of the parties' finances. The parties submitted documents with projections of their business finances up to April 2022. Therefore, the court used the parties' respective 2021 incomes to calculate support obligations in 2022. Mother's annual income was $376,392 non-inclusive of the PPP funds. Father's income was $1.773 million

---

[3] In the interim, this Court adjudicated an appeal concerning attorney fees in this matter. *See Joubert v. Herbert*, No. 1102-19-4, 2020 Va. App. LEXIS 228 (Sept. 1, 2020).

non-inclusive of the PPP funds. The parties agreed that the PPP funds should be considered income, although their experts disagreed on the *year* they should be considered income. Mother's expert testified that the parties' PPP loans should be counted as income in the year the loans were received for the purposes of calculating support. Meanwhile, father's expert testified that they should be counted as income in the year the loans were forgiven. Even so, father conceded that PPP loans should be counted as income in the year they were received.

The circuit court "agree[d] with [father's] counsel that PPP loans given to both parties are a nonrecurring event, and it should be taken in the year that it was given." However, the court declined to include the loans in the parties' combined monthly income and calculated the presumptive child support without the loans. The circuit court held that the loans should not be counted as income for the purposes of calculating support because they are a "nonrecurring event" and operate "like any loan to any corporation." The circuit court reasoned:

> If we include [the PPP loan] in the 2022 income, then what's going to happen is we're including an extra $500,000 to Mr. Joubert when he doesn't get it, and in 2023 he's going to have to come in and do a motion to modify, which nobody wants to do. So it makes sense in my mind to just take the actual income of the parties.

The circuit court then addressed the parties' arguments on support arrearages and childcare. Mother argued that father owed her arrearages for out-of-network medical expenses incurred before December 20, 2019. She claimed that the circuit court's order to split the out-of-network medical expenses on a 50-50 basis did not apply to expenses incurred before December 20, 2019, and therefore, father should have paid 84.4% rather than 50% of those expenses. Mother entered an exhibit into evidence showing that father only paid 50% of out-of-network expenses incurred before December 20, 2019,[4] and so owed arrearages on these payments. The circuit court stated that it had

---

[4] Mother entered into evidence "Exhibit 37A-D" including receipts of medical bills she paid. The exhibit depicts the difference between the 50% father paid and the 84.4% father owed to mother.

ordered the parties to split out-of-network expenses on a 50-50 basis, rather than in proportion to their incomes, and father had already paid all the expenses he owed. The circuit court ruled that it would not change the order, "it was the order that [the court had] in place when [it] changed custody was 50/50 for out of network because [mother] has ultimate decision making authority. And it's the check and balance with these two people that can't agree that the sky is blue."

Mother argued that she needed ten hours a week of work-related childcare. The circuit court reduced mother's childcare expenses from ten to eight hours a week because it found that the children were not in her physical custody for the remaining two hours of the week. The court's presumptive child support calculation thus included eight rather than ten hours of weekly childcare.

Mother asked the court to modify its March 2019 ruling on the payment of unreimbursed out-of-network medical expenses, extracurricular expenses, and private school tuition and order the parties to begin paying these expenses in proportion to their incomes. The circuit court noted the relative wealth of the parties when considering these requests, stating, "these parties are exceptionally well-to-do by anybody's standards. Even [mother] standing alone is in the upper [ten] percent or the top [one] percent of this country." Mother's attorney asked the circuit court to consider the parties' proportional wealth in his argument. The circuit court found no material change in circumstances to justify a modification of any of these provisions, given that the parties' income ratio had not significantly changed since 2019 and mother continued to enjoy greater discretion in choosing the children's out-of-network medical providers and extracurricular activities.

On August 26, 2022, the court issued a modified child support order. The order directed father to pay $6,539 in monthly child support—the guideline amount with no deviations. The order also directed the parties to pay in-network medical expenses in proportion to their incomes with mother paying 18% and father paying 82%, and to continue paying out-of-network expenses on a 50-50 basis. The order also directed the parties to continue paying extracurricular expenses on a

50-50 basis and private school tuition on a 60-40 basis. Finally, the court denied mother's counterclaim and stated that father did not owe arrearages for unreimbursed medical expenses.

In a letter opinion dated August 9, the court awarded mother $48,000 in attorney fees. Although mother claimed to have incurred a total of $144,906 in attorney fees from work done by her attorney and other legal professionals who assisted with the case, the court only considered the $96,000 in fees incurred by the attorney because mother's fee affidavit did not sufficiently "delineate[]" the work billed by the other professionals or describe their qualifications. In awarding mother 50% of the fees that her attorney incurred, the court stated that it had weighed "all the equities, facts, and circumstances throughout the pendency of the claim and the [c]ourt's denial of [m]other's counterclaim."

On September 15, mother moved the court to reconsider its findings that father owed no arrearages for unreimbursed medical expenses and that she required eight, rather than ten, hours of work-related childcare a week. She also challenged the court's determination of her attorney fees award. On September 19, mother filed written objections to the court's modified child support order challenging the court's decisions to exclude the parties' PPP loans from the presumptive child support calculation and not to modify its prior ruling relating to the payment of unreimbursed medical expenses, extracurricular expenses, and private school tuition. The court denied the motion to reconsider. Mother then timely appealed the denial of the motion and the modified child support order.

ANALYSIS

Mother presents five arguments challenging the circuit court's modified child support order and the court's subsequent denial of her motion to reconsider. First, she argues that the circuit court erred by not including the PPP loans in the presumptive child support calculation. Second, she asserts that the court incorrectly determined her attorney fees award. Third, she maintains that the

court erred in finding that father did not owe any arrearages for unreimbursed medical expenses. Fourth, she alleges that the court incorrectly found that she needed eight, rather than ten, hours of work-related childcare a week. Fifth, she argues that the court erred by ordering the parties to continue paying out-of-network medical and extracurricular expenses on a 50-50 basis and private school tuition on a 60-40 basis, rather than in proportion to their incomes.

## I. The circuit court erred by excluding the PPP loans from the presumptive child support calculation.

Mother argues that the PPP loans that the parties received in 2021 should have been included in the parties' gross monthly income for the purposes of calculating presumptive child support.[5] We agree and hold that the circuit court erred by excluding the PPP loans.

Code § 20-108.2(C) sets forth a series of factors that the circuit court must consider when calculating the parties' "gross income" for the purposes of determining a presumptive child support obligation. "Whether the circuit court correctly concluded that [an item is] not 'income' as defined by Code § 20-108.2(C) presents a question of law that we review de novo." *Oley v. Branch*, 63 Va. App. 681, 690 (2014). This Court will not reverse an award of child support unless "it appears from the record that the circuit court judge has abused [their] discretion by not considering or by misapplying one of the" factors in Code § 20-108.2(C). *Niblett v. Niblett*, 65 Va. App. 616, 624 (2017) (quoting *Milam v. Milam*, 65 Va. App. 439, 451 (2015)). "The amount of child support under the child support guidelines must be based on the parents' actual gross income." *Tidwell v. Late*, 67 Va. App. 668, 679 (2017) (quoting *Niblett*, 65 Va. App. at 625).

"The issue of husband's income is a question of fact, and 'the judgment of the [circuit] court on questions of fact is entitled to great weight and will not be disturbed unless it is plainly

---

[5] Mother withdrew a subpart in her assignment of error that the circuit court erred "by failing to account for the tax-free status of such loans in determining the parties' income and/or actually or effectively deviating from child support."

wrong or without evidence to support it.'" *Patel v. Patel*, 61 Va. App. 714, 727 (2013) (alteration in original) (quoting *Smith v. Bd. of Supervisors*, 201 Va. 87, 91 (1959)). The record shows that the circuit court used the most recent data available. *See, e.g.*, *Collins v. Leeds*, 69 Va. App. 1, 14 (2018) (the circuit court did not err in imputing income to husband because wife "failed to offer evidence of husband's truly recent earnings"); *Niblett*, 65 Va. App. at 635 (remanding a child support calculation because the circuit "court erred in failing to first consider recent past earnings to calculate the amount of income that should be imputed to father because of his voluntary unemployment"); *Solomond v. Ball*, 22 Va. App. 385, 392 (1996) (holding that "[d]etermination of support awards must be based on contemporary circumstances" (quoting *Keyser v. Keyser*, 2 Va. App. 459, 461 (1986))). With a trial conducted in May 2022 and hearings in June and August 2022, the parties did not have evidence of their income for the remainder of the 2022 fiscal year. The parties are also business owners with variable incomes— made even more uncertain by the outbreak of COVID-19. Thus, the circuit court based its calculation of child support on the parties' income in 2021.

Code § 20-108.2(C) defines "gross income" for the purposes of calculating child support as:

> [A]ll income from all sources, and shall include, *but not be limited to*, income from salaries, wages, commissions, royalties, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits except as listed below, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, veterans' benefits, spousal support, rental income except as listed below, *gifts, prizes, or awards*.

(Emphases added). "Under Code § 20-108.2(C), gross income includes 'all income from all sources,' and *unless specifically excluded, any income from any source is subject to inclusion*." *Oley*, 63 Va. App. at 695 (quoting *Frazer v. Frazer*, 23 Va. App. 358, 378 (1996)). "'Gross income' shall not include":

> 1. Benefits from public assistance and social services programs as defined in [Code] § 63.2-100;

2. Federal supplemental security income benefits;

3. Child support received; or

4. Income received by the payor from secondary employment income not previously included in "gross income," where the payor obtained the income to discharge a child support arrearage established by a court or administrative order and the payor is paying the arrearage pursuant to the order. "Secondary employment income" includes but is not limited to income from an additional job, from self-employment, or from overtime employment. The cessation of such secondary income upon the payment of the arrearage shall not be the basis for a material change in circumstances upon which a modification of child support may be based.

Code § 20-108.2(C).

The Paycheck Protection Program offered forgivable loans to small businesses during the COVID-19 pandemic, providing funds to maintain payrolls, hire back laid-off employees, and cover expenses such as rent, mortgage interest, and utility bills. The program was initially included in the CARES Act, granting the U.S. Small Business Administration (SBA) permission to lend money to eligible businesses in need. The CARES Act provided for forgiveness of PPP loans on a relatively broad basis. *See* CARES Act § 1106, codified as amended at 15 U.S.C. § 636m(b).

Loans, once forgiven, are ordinarily treated as income for federal and state income tax purposes. *See* 26 U.S.C. § 61(a)(11) (including in the definition of gross income "[i]ncome from discharge of indebtedness"); Code § 58.1-322.[6] There are no reported Virginia cases directly

---

[6] In the context of federal income taxes, the CARES Act created an exception to this general principle for PPP loan forgiveness. *See* 15 U.S.C. § 636m(i)(1) ("*For the purposes of the Internal Revenue Code of 1986* . . . no amount shall be included in the gross income of the eligible recipient by reason of forgiveness of indebtedness described in subsection (b)." (emphasis added)); *id.* § 636m(b) (setting forth categories of PPP payments eligible for forgiveness). We do not understand that exception to alter their characterization under Virginia's child support laws. *Compare* 26 U.S.C. § 61(a)(11) ("Except as otherwise provided *in this subtitle*, gross income [includes] . . . [i]ncome from discharge of indebtedness."), *with id.* § 62(a)(1) ("For the purposes of *this subtitle*, the term 'adjusted gross income' means [among other things] . . . [t]rade and business deductions." (emphasis added)), *and* Code § 20-108.2(C)

considering the treatment of loans and loan forgiveness as "gross income" for child support determinations under Code § 20-108.2(C). However, we have no occasion to consider the matter here, as the parties agreed that the funds they each received as PPP loans that were later forgiven constitute income in the year the loans were made.

Despite the parties' agreement on the matter, the circuit court excluded all amounts received through the PPP from its calculation of presumptive child support under the statutory guidelines, reasoning that PPP receipts were a "nonrecurring event." This was error. *See Cranwell v. Cranwell*, 59 Va. App. 1155, 1166-67 (2011) ("The fact that certain sources of income may be irregular or not expected to continue in the future is irrelevant to a present calculation of the parties' income."). Our precedent establishes that the definition of "gross income" under Code § 20-108.2(C) includes items received on a one-time, non-recurring basis. In *Goldhamer v. Cohen*, 31 Va. App. 728, 737 (2000), we explained that "the statute clearly includes irregular income in the gross income computation because gifts, prizes, or awards are defined as gross income," and thus, exclusion of inheritance as an item of income because it was a one-time occurrence was "contrary to the express language of the statute." While a court is permitted to deviate from the guidelines amount under specified conditions, it may not achieve the same result by tinkering with the meaning of "gross income" in calculating the presumptive amount under the guidelines. *See* Code § 20-108.1.

Here, mother received a $54,000 PPP loan in 2021 and father received a $420,000 PPP loan in the same year, and both loans were subsequently forgiven. The parties agree that the PPP loans should be treated as income. The fact that these loans were nonrecurring does not affect the analysis. *See Goldhamer*, 31 Va. App. at 737 (holding that Code § 20-108.2(C) "clearly includes

---

("For the purposes of *this section*, 'gross income' means all income from all sources . . . ." (emphasis added)).

- 10 -

irregular income in the gross income computation"). The circuit court erroneously reasoned that the PPP loans should be excluded because including them would create a need for future modification. Circuit courts must only consider the parties' current circumstances in determining presumptive child support and may not make the determination on the basis of conditions that are anticipated:

> "Determination of support awards must be based on contemporary circumstances and modified in the future as changes in circumstances occur." A [circuit] court may not abrogate its responsibility to determine that a material change of circumstance justifies a modification of child support by entering an order that results in an automatic increase in the support obligation upon the occurrence of future events.

*Solomond*, 22 Va. App. at 392-93 (citations omitted) (quoting *Keyser*, 2 Va. App. at 461). Because the circuit court should have considered the parties' PPP loans in calculating the presumptive child support amount, this Court reverses the circuit court's ruling and, on remand, directs the court to include the 2021 PPP loans in its support calculation.

## II. The circuit court erred in finding that father owed no arrearages for unreimbursed medical expenses.

Mother argues that the circuit court erred in finding that father did not owe any arrearages for unreimbursed medical expenses from out-of-network providers.[7] The circuit court has "'the authority to interpret [its] own orders.' . . . 'That interpretation, however, must be reasonable, and [this Court] will apply an abuse of discretion standard.'" *Davis v. Commonwealth*, 70 Va. App. 722, 732 (2019) (second alteration in original) (first quoting *Fredericksburg Constr. Co. v. J.W. Wyne Excavating, Inc.*, 260 Va. 137, 144 (2002); and then quoting *Bajgain v. Bajgain*, 64 Va. App. 439, 453 (2015)). The circuit court abuses its discretion when its findings are plainly wrong,

---

[7] Because the court erred in finding that father did not owe any arrearages for unreimbursed medical expenses, we do not reach mother's argument that the court incorrectly found that she should have deposited the checks that father sent her or that such a deposit would constitute "an accord and satisfaction" pursuant to Code § 8.3A-311. *See Taylor v. Commonwealth*, 78 Va. App. 147, 157 (2023) (holding that the "doctrine of judicial restraint dictates that we decide cases on the 'best and narrowest grounds available'").

unsupported by the evidence, or "when it makes an error of law." *Congdon v. Congdon*, 40 Va. App. 255, 262 (2003); *see also Ridenour v. Ridenour*, 72 Va. App. 446, 452-53 n.2 (2020) (reviewing a child-support award for an abuse of discretion, and characterizing findings on unreimbursed medical expenses as "factual"). We agree with mother that the record shows that father owes arrearages. The circuit court, therefore, erred by finding that father owed no arrearages.

In support of its finding that father owed no arrearages, the circuit court stated that it had only ordered father to pay 50% of out-of-network medical expenses, which father had paid. On the contrary, the record shows that the court had ordered father to pay 74.3% of out-of-network medical expenses incurred before December 20, 2019—and that the 50-50 split would only apply to expenses incurred after this date. Since the record establishes that father paid 50% rather than 74.3% of the out-of-network medical expenses incurred before December 20, 2019, arrearages are owed for the discrepancy. Because the circuit court's finding that father owed no arrearages is unsupported by the record, we reverse this ruling and remand the matter for the circuit court to determine the arrearages owed. *Cf. Jones v. Davis*, 43 Va. App. 9, 16 (2004) ("[W]e reverse the decision of the [circuit] court and remand the case with direction that a judgment be entered against father for the amount of his [child-support] arrearages without adjustment for non-conforming payments.").

III. The circuit court did not abuse its discretion in calculating attorney fees.

Mother contends that the circuit court abused its discretion by failing to consider all the equities in its attorney fee award, specifically the parties' "vastly disparate wealth." She also argues that the circuit court erred by "excluding a portion of [her] legal expenses from consideration due solely to a failure to detail the work experience" of her attorney's legal staff. Mother asserts that because the circuit court previously accepted less-detailed "block billing," the circuit court was required to consider the current attorney fees as the "law of the case."

"An award of attorney fees is within the sound discretion of the [circuit] court, and we review the [circuit] court's decision only for an abuse of discretion." *Wills v. Wills*, 72 Va. App. 743, 767 (2021) (quoting *Lewis v. Lewis*, 53 Va. App. 528, 543-44 (2009)). A circuit court

> abuses its discretion "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered but the court, in weighing those factors, commits a clear error of judgment."

*Mills v. Mills*, 77 Va. App. 543, 564 (2023) (quoting *Lambert v. Sea Oats Condo. Ass'n*, 293 Va. 245, 253 (2017)). A circuit court also abuses its discretion "when it makes an error of law." *Rainey v. Rainey*, 74 Va. App. 359, 377 (2022) (quoting *Chaney v. Karabaic-Chaney*, 71 Va. App. 431, 434 (2020)). Mother has not identified the consideration of "an irrelevant or improper factor" or any other error in the circuit court's attorney fee award.

A. *The circuit court did not err by failing to weigh the equities in its attorney fee award.*

The attorney fees statute grants broad discretion to the circuit court in awarding attorney fees in child support cases. "Costs may be awarded to either party as equity and justice may require." Code § 20-99(6); *accord* Code § 16.1-278.19 ("In any matter properly before the [JDR] court, the court *may* award attorney fees and costs on behalf of any party as the court deems *appropriate* based on the relative financial ability of the parties and any other *relevant factors* to attain equity." (emphases added)).[8] When awarding attorney fees, "a [circuit] court may consider the 'unique equities of each case,' and *may* consider factors *including* 'ability to pay a fee . . . and whether [a] party unnecessarily increased litigation costs through unjustified conduct.'" *Yazdani v. Sazegar*, 76 Va. App. 261, 273 (2022) (emphases added) (quoting *Rinaldi*

---

[8] "[D]espite differences in the precise statutory language used, the basis for a discretionary award of attorney fees under Code § 16.1-278.19 is essentially indistinguishable from the basis for a discretionary award of attorney fees under . . . [Code §] 20-99(6) . . . ." *Sobol v. Sobol*, 74 Va. App. 252, 289 (2022).

*v. Rinaldi*, 53 Va. App. 61, 78 (2008)). "The award must be reasonable 'under all of the circumstances revealed by the record.'" *Id.* (quoting *Sobol v. Sobol*, 74 Va. App. 252, 288 (2022)). "[T]he relative financial abilities and support issues should be considered as *factors* in weighing the equities. However, these factors are not exclusively determinative of whether an award should or should not be made." *Cirrito v. Cirrito*, 44 Va. App. 287, 300 (2004) (emphasis added).

In its 2022 award of attorney fees, the circuit court stated that the court considered "all of the equities, facts, and circumstances of the case throughout the pendency of the claim and the Court's denial of [m]other's counterclaim." The circuit court noted that the parties "can't agree that the sky is blue," but did not accuse them of engaging in frivolity. In declining to adjust the parties' responsibility for covering private school tuition, the circuit court said, "these parties are exceptionally well-to-do by anybody's standards. Even [mother] standing alone is in the upper [ten] percent or the top [one] percent of this country." Mother's attorney noted the difference in the parties' proportional wealth in his arguments. The record shows that the circuit court considered the parties' "relative financial ability" in awarding attorney fees. As such, this Court finds that the circuit court did not abuse its discretion when weighing the equities in its attorney fees award.

B. *Under our precedent, the circuit court did not abuse its discretion by excluding costs incurred by other legal professionals.*

Mother requested $144,906 in attorney fees, but the circuit court considered only the $96,000 incurred by her principal attorney and on August 9, 2022, awarded her only $48,000. The circuit court excluded costs incurred by other legal professionals for a lack of specificity concerning their "qualifications and billing details." Those details only set forth those professionals' names, their hourly rate, and the number of hours that they worked. Mother argues that the circuit court's acceptance of a block-billed attorney fees affidavit in the 2018 trial

- 14 -

that included costs incurred by paralegals required the court to award her similar fees in the 2022 trial. Mother also alleges that the circuit court considered an "improper factor" by noting the lack of specificity in her attorney fee affidavit.

The fact that a circuit court accepts block billing once does not mean that the court will necessarily accept block billing again. There is limited appellate guidance on this issue, but a brief survey of circuit court cases indicates that these courts exercise wide discretion when evaluating billing formats in attorney fee affidavits. *Cf. Lindsey v. Lindsey*, 158 Va. 647, 653 (1932) (noting that circuit court opinions are "often exceedingly useful and frequently serve to bring to our attention incidents of importance which would otherwise not be noted in the record").

Generally, block billing is not prohibited if this billing format provides a "rational" summary of a legal professional's work. *See, e.g.*, *Tayyab v. Khan*, 2020 Va. Cir. LEXIS 708, at *11 (Loudoun Cnty. Cir. Ct. Nov. 20, 2020) ("Although Virginia has not prohibited billing in that manner, it does limit the Court's ability to determine which portion of each time entry was related solely to the issues of custody, visitation, and child support."); *In re Ebadom VA, LLC*, 105 Va. Cir. 21, 26 (Fairfax Cnty. Cir. Ct. Apr. 6, 2020) ("Where the Court cannot understand the substance or gist of a line item due to redactions, or where it finds it cannot conclude a particular block billed item is reasonable, the Court may cut them from its calculation of a total attorney fees award."); *Tureson v. Open Sys. Scis. of Va., Inc.*, 86 Va. Cir. 473, 474 (Fairfax Cnty. Cir. Ct. May 31, 2013) ("With respect to the issue of block billing, '[w]hen tasks are *reasonably* listed in block listings, in a manner that provides a *rational* summary of the time spent on various projects, the Court will accept the block billing summary as reasonable.'" (alteration in original) (emphases added) (quoting *N. Va. Real Estate, Inc. v. Martins*, 80 Va. Cir. 478, 487 (Fairfax Cnty. Cir. Ct. June 29, 2010), *aff'd on other grounds*, 283 Va. 86, 120

(2012))). This qualified, often tepid, approval of block billing appears to be the norm—a norm consistent with the broad discretion given to circuit courts to calculate attorney fees. Block billing is neither categorically acceptable nor unacceptable. The circuit court did not hold that it would always accept block billing and did not bind itself to accept mother's attorney fee affidavit in *this* case.

Mother also asserts that her attorney fees request was supported by a "more robust" affidavit than a previous 2018 affidavit accepted by the court. The circuit court did not consider this to be sufficient justification for an increased fee award, finding that the "qualifications and billing details [for mother's other legal professionals] are neither delineated nor set forth in the fee affidavit." Mother argues that, by basing its decision on the inadequacy of the legal professionals' qualification and billing details, the circuit court considered an "improper factor[]." "Circuit courts have broad statutory authority to award attorney fees in a domestic relations matter." *Yazdani*, 76 Va. App. at 273. There is no "statutory scheme" governing how a circuit court is to award attorney fees. *See Taylor v. Taylor*, 27 Va. App. 209, 217 (1998) ("Rather than following a statutory scheme, in determining whether to award attorney[] fees the trial court considers 'the circumstances of the parties,' and the 'equities of the entire case.'" (first quoting *Barnes v. Barnes*, 16 Va. App. 98, 106 (1993); and then quoting *Davis v. Davis*, 8 Va. App. 12, 17 (1989))). The circuit "court has wide latitude in this context . . . ." *Yazdani*, 76 Va. App. at 273.

"In determining a reasonable fee, the fact finder *should* consider such circumstances as the time consumed, the effort expended, the nature of the services rendered, and *other attending circumstances*." *Tazewell Oil Co. v. United Va. Bank/Crestar Bank*, 243 Va. 94, 112 (1992) (emphases added) (quoting *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449 (1991)). In *Tazewell*, the Supreme Court upheld an attorney fee award because "the amount fixed by the

[circuit] court was amply supported" by the record. *Id.* There, the party awarded attorney fees submitted "almost 300 pages of contemporaneous time records detailing the activities for which fees were sought." *Id.* at 111. That party "also submitted affidavits of its attorney upon the reasonableness of the hourly rates charges and the accuracy of the time billed." *Id.* Thus, the details and specificity within an attorney fee affidavit are eminently appropriate factors for the circuit court to consider before awarding attorney fees.

The circuit court did not consider an improper factor when excluding the costs incurred by mother's proposed legal professionals for a lack of specificity. The circuit court's ruling on the lack of specificity and details went to "the effort expended" and "the nature of the services rendered" by those professionals. Therefore, we cannot say the circuit court abused its discretion by excluding the costs incurred.

C. *The law-of-the-case doctrine did not require the circuit court to accept the attorney fees affidavit.*

Along with the block billing issue, mother also assigned error to the circuit court "contradicting its own prior rulings" and law-of-the-case principles by failing to accept the costs incurred by her other legal professionals in the 2022 trial. Citing *Steinman v. Clinchfield Coal Corp.*, 121 Va. 611, 622-23 (1917), mother argues that her most recent attorney fee affidavit was "more robust" than the one accepted by the circuit court in 2018, and, therefore, the circuit court was bound to accept the above billing.

We find the law-of-the-case doctrine and *Steinman* inapposite. The law-of-the-case doctrine does not apply to the circuit court's earlier choice to consider a less "robust" affidavit. First, whether to accept an attorney fee affidavit as "reasonable" is a factual question, not a legal one. *See Holmes v. LG Marion Corp.*, 258 Va. 473, 479 (1999) ("When, as here, recovery of attorneys' fees is authorized by statute, the *fact finder* must determine 'from the *evidence* the amount of reasonable fees under the *facts and circumstances* of each particular case." (emphases

- 17 -

added) (quoting *Tazewell*, 243 Va. at 111)).[9]  Second, a subsequent attorney fee affidavit necessarily presents a new set of facts changing the issue before the circuit court.  Third, neither the circuit court's June 19, 2019 ruling, nor the circuit court's August 9, 2022 ruling, nor this Court's rulings in the parties' two previous appeals,[10] held as a matter of law that mother's billing statements categorically must be accepted when assessing attorney fees.

The circuit court expressly considered "all of the equities, facts, and circumstances of the case throughout the pendency of the claim and the Court's denial of mother's counterclaim."  The circuit court considered the parties' relative wealth and carefully weighed its attorney fees award.  Finally, the circuit court acted well within its discretion by excluding certain items in mother's most recent attorney fees affidavit.  This Court, therefore, finds no abuse of discretion.

IV.  The circuit court did not err in finding that mother required less childcare than requested.

Mother argues that the circuit court abused its discretion by finding that she required eight, rather than ten, hours a week of childcare and calculating the presumptive child support based on this amount.

This Court reviews the circuit court's findings on childcare for an abuse of discretion.  *See, e.g.*, *Oley*, 63 Va. App. at 697 ("[W]e find that the circuit court did not abuse its discretion in denying Oley's request for childcare costs.").  The circuit court abuses its discretion when it "makes

---

[9] "Under the law of the case doctrine, a *legal* decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation . . . ." *Hunter v. Hunter*, 77 Va. App. 468, 481 (2023) (emphasis added) (quoting *Slusser v. Commonwealth*, 74 Va. App. 761, 778 (2022)). Where "the *facts are the same*, nothing decided on the first appeal can be re-examined on a second appeal." *Miller-Jenkins v. Miller-Jenkins*, 276 Va. 19, 26 (2008) (emphasis added) (quoting *Steinman*, 121 Va. at 620).

[10] *Herbert v. Joubert*, No. 1384-17-4, 2018 Va. App. LEXIS 222 (Aug. 14, 2018); *Joubert v. Herbert*, No. 1102-19-4, 2020 Va. App. LEXIS 228 (Sept. 1, 2020).

factual findings that are plainly wrong or unsupported by the evidence." *Congdon*, 40 Va. App. at 262.

A party seeking an award of employment-related childcare under Code § 20-108.2(F) has the burden to produce sufficient evidence showing the appropriate amount of childcare expenses. *Prizzia v. Prizzia*, 58 Va. App. 137, 171-72 (2011) (citing *Bowers v. Bowers*, 4 Va. App. 610, 617 (1987) (observing that even under a mandatory statute, a litigant still carries "the burden to present evidence sufficient for the court to discharge its duty")). Mother did not carry this burden here. The circuit court stated that mother required eight, not ten, hours a week of childcare because the children were not in her physical custody for the remaining two hours of the week. The court's finding that mother only has custody of the children four days a week while father has custody on the remaining weekday is supported by evidence in the record.[11] The circuit court properly found that mother was not entitled to receive childcare for the two hours in which the children were not in her physical custody. *See Oley*, 63 Va. App. at 697 (holding that Code § 20-108.2(F) only requires that the parent receive child support for childcare expenses incurred as a result of the parent's employment and that work done by a nanny while the children were not physically present was not employment-related childcare under the statute).

Because the court was not plainly wrong in finding that mother required eight rather than ten hours a week of childcare due to her employment, we hold that the court did not abuse its discretion in awarding eight hours of childcare and affirm the court's decision.

---

[11] The final custody order entered by the court on March 8, 2019, shows that father "shall have regular visitation every-other weekend from Friday after school dismissal . . . until school resumes on Monday morning" and "every other Thursday from school dismissal . . . until school resumes the following morning."

V. The circuit court did not err in finding that no material change in circumstances justified modifying its order to pay unreimbursed medical expenses, extracurricular expenses, and private school tuition.

Mother argues that the court should have modified its March 2019 ruling to order the parties to pay all these expenses in proportion to their incomes. She also contends that the circuit court erred by ordering the parties to continue paying out-of-network medical and extracurricular expenses[12] on a 50-50 basis and private school tuition on a 60-40 basis. This Court holds that the circuit court erred on neither point.

"Once a child support award has been entered, only a showing of a material change in circumstances will justify modification of the support award." *Milam*, 65 Va. App. at 452 (quoting *Crabtree v. Crabtree*, 17 Va. App. 81, 88 (1993)). "The determination of child support is a matter of discretion for the circuit court, and therefore we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." *Id.* at 451 (quoting *Oley*, 63 Va. App. at 699). Although Code § 20-108.2(D) generally requires parties to pay unreimbursed medical expenses "in proportion to their gross incomes," circuit courts may deviate from this statutory requirement if they believe that such a deviation would be just and appropriate under the circumstances. *See Ridenour*, 72 Va. App. at 454 ("[N]one of the guidelines' provisions remove a [circuit] court's discretion to deviate from the child support guidelines, including, when warranted, awarding a monetary award for expenses that would be considered unreimbursed medical expenses."). In declining to modify its prior ruling ordering the parties to pay out-of-network expenses on a 50-50 basis, the court explained that it had given "[m]other great power to override [father's] decision" in choosing

---

[12] Although father argued that mother's briefing on the issue of extracurricular expenses was inadequate, this Court finds that mother's argument is sufficiently supported with "principles of law and . . . authorities" to enable our review. *Contra, e.g.*, *Barnes v. Barnes*, 64 Va. App. 22, 32 (2014) (refusing to consider an appellant's argument that "relies on broad and conclusory assertions without a single citation to any controlling legal authority"). We will therefore consider mother's argument.

out-of-network providers and, therefore, the 50-50 split was needed to maintain equity between the parties.

The record supports the circuit court's finding that the circumstances leading to the above award has not materially changed. The circuit court noted that the parties' income ratio had not significantly changed since the 2019 support order. Indeed, the circuit court found that mother's share of the income had increased slightly from roughly 15% of the parties' combined income to 18%. The circuit court also noted mother's independent affluence and continued ability to pay under the original agreement. The circuit court also declined to change its order regarding the payment of extracurricular expenses and private school tuition based on a similar rationale. The court noted that mother enjoyed great discretion in choosing school-related extracurricular activities "without [father's] blessing" and that the 50-50 arrangement was appropriate given that mother continued to have a greater role in choosing activities. These findings are not plainly wrong and, therefore, this Court will not disturb them.

## VI. This Court will not award appellate attorney fees.

Both parties request attorney fees on appeal. Father argues that mother (1) raised a "large number" of frivolous arguments, some of which "contradict the positions she took at trial," (2) attempts to "prejudice this Court against" him, (3) raised issues that "are financially insignificant," and (4) "generated unnecessary expense and delay." Mother counters that father's request "is endemic of the posture he brings of the continued litigation in this matter" and that her arguments about the PPP loans, in particular, are consistent with Virginia law. She also points out that father twice unsuccessfully appealed attorney fees awarded by the circuit court.

"The decision of whether to award attorney[] fees and costs incurred on appeal is discretionary." *Koons v. Crane*, 72 Va. App. 720, 742 (2021) (quoting *Friedman v. Smith*, 68 Va. App. 529, 545 (2018)). "[T]his Court's decisions regarding attorney[] fees and costs are

based on its consideration of factors including whether the requesting party prevailed, whether the appeal was frivolous, whether either party generated unnecessary expense or delay in pursuit of its interests, as well as 'all the equities of the case.'" *Friedman*, 68 Va. App. at 546 (quoting Rule 5A:30(b)(3)-(4)). "In domestic relations cases, we award appellate attorney[] fees when the arguments on appeal are 'not fairly debatable under any reasonable construction of the record or the governing legal principles.'" *Id.* (quoting *Brandau v. Brandau*, 52 Va. App. 632, 642 (2008)).

This appeal was not frivolous, and the equities of the case do not call for an award to either party. Mother prevailed on two of her assignments of error. We are not persuaded that the parties raised meritless issues to drive up litigation costs. Neither party made arguments about the law or facts that are "not fairly debatable," as evidenced by the fact that this Court affirms in part and reverses in part. This Court, therefore, denies both parties' requests for appellate attorney fees.

CONCLUSION

The circuit court erred in excluding the parties' PPP loans from the presumptive child support calculation and finding that father owed no arrearages for unreimbursed medical expenses. The circuit court otherwise did not err for the reasons given above. Accordingly, this Court affirms in part, reverses in part, and remands the case for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*